UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| CHRISTINA HARTMAN | CIVIL ACTION |
|---|---|
| VERSUS | NO: 16-15467 |
| LAFOURCHE PARISH HOSPITAL, ET AL. | SECTION "H" |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment (Doc. 34) and Plaintiff's Motion for Partial Summary Judgment (Doc. 36). For the following reasons, Defendants' Motion is GRANTED IN PART, and Plaintiff's Motion is DENIED AS MOOT.

## BACKGROUND

This is an action under the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA") and the Louisiana Employment Discrimination Law ("LEDL"). In July 2014, Plaintiff Christine Hartman was hired as a medical staff coordinator for Defendant Lafourche Parish Hospital Service District No. 1 d/b/a Lady of the Sea General Hospital ("LOSGH") under the supervision of Defendant Bennie Smith. In August 2015, Plaintiff took

eight weeks of FMLA leave to undergo a major surgical procedure. In November 2015, she requested additional FMLA leave to care for her husband who had been diagnosed with cancer and renal failure. Smith initially denied this request, mistakenly believing that Plaintiff could not take FMLA leave for two different qualifying events in the same year. However, she allowed Plaintiff to work a flexible schedule. In February 2016, Plaintiff again requested FMLA leave to care for her husband as he underwent a stem cell transplant. This request was granted, and she took leave from February 24, 2016 to April 26, 2016. Plaintiff was terminated immediately upon her return. Smith cited mistakes in paperwork and poor performance as the reason for Plaintiff's termination. Plaintiff brings claims for FMLA interference, FMLA retaliation, ADA discrimination, and ADA and LEDL retaliation.

Defendants have moved for summary judgment seeking dismissal of all of Plaintiff's claims. Plaintiff has moved for partial summary judgment seeking dismissal of certain of Defendants' affirmative defenses. This Court will consider each argument in turn.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue

---

[1] Fed. R. Civ. P. 56(c) (2012).

of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

---

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[3] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).
[4] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).
[6] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[7] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[8] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

### Defendants' Motion for Summary Judgment

Defendants seek dismissal of Plaintiff's claims for FMLA interference, FMLA retaliation, ADA discrimination, and ADA and LEDL retaliation.[9]

### I. FMLA Interference

Plaintiff alleges that Defendants interfered with her right to FMLA leave when they denied her second request to take FMLA leave to care for her husband in November 2015. The FMLA allows an employee to take reasonable leave for medical reasons or to care for a family member and prohibits an employer from interfering with, restraining, or denying the exercise or attempt to exercise FMLA rights.[10] To establish a prima facie interference case, Plaintiff must show that (1) she was an eligible employee, (2) Defendant was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of the intent to take FMLA leave, (5) Defendant denied the benefits to which she was entitled under the FMLA, and (6) she was prejudiced.[11] Interference claims do not require a showing of discriminatory intent.[12]

Defendants allege that Plaintiff cannot succeed on her FMLA interference claim because she cannot show prejudice. Defendants allege that despite denying her second FMLA request, Smith allowed Plaintiff to work a flexible schedule so that she could attend medical appointments with her

---

[9] Although Defendants argue for dismissal of an ADA harassment claim and failure to accommodate claim, Plaintiff states that she has not asserted either claim.
[10] 29 U.S.C. §§ 2601, 2615.
[11] *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 Fed. Appx. 312, 316 (5th Cir. 2013).
[12] *Jones v. Children's Hosp.*, 58 F.Supp.3d 656, 668 (E.D.La. 2014).

husband. Plaintiff admitted that her husband never missed a medical appointment and that she did not have to hire a caretaker to care for her husband despite the denial of FMLA leave.

Plaintiff alleges that she suffered prejudice because, despite allowing her a flexible schedule, Smith piled work on Plaintiff right before she intended to leave to bring her husband to the doctor and then "wrote up" Plaintiff for passing her work off to a co-worker. This disciplinary action was then taken into consideration as a "history of work performance issues" when she was ultimately terminated. Plaintiff argues that had she been on FMLA leave as she had requested, she would not have been disciplined. Accordingly, this Court holds that there is a material issue of fact as to whether Plaintiff suffered prejudice when her second FMLA leave request was denied and specifically whether the "write ups" that she alleges occurred as a result of her more flexible schedule contributed to her ultimate termination.[13] Defendants' request for summary judgment on this claim is denied.

## II.    FMLA Retaliation

Plaintiff alleges that she was fired in retaliation for taking FMLA leave. "In order to establish a prima facie case of retaliation under the FMLA, the employee must show the following: 1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably

---

[13] *See Alexander v. Carolina Fire Control Inc.*, 112 F. Supp. 3d 340, 350 (M.D.N.C. 2015) ("[I]n considering the steps Plaintiff would have taken had Defendant not allegedly discouraged her from taking FMLA leave, there is sufficient evidence to create a dispute of fact as to whether Plaintiff would have still experienced any alleged communication shortcomings that are alleged to have resulted in her ultimate termination"); *Felder v. Edwards*, 2016 WL 7668477, at *3 (S.D. Miss. May 31, 2016) (stating that plaintiff was prejudiced when she was terminated for excessive absences after being denied FMLA leave).

than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA."[14]

> Retaliation claims under the FMLA are analyzed under the McDonnell Douglas burden-shifting framework. . . . If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to provide a 'legitimate, non-discriminatory reason for the employment decision.' If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the burden returns to the plaintiff, who must then be afforded an opportunity to rebut the employer's purported explanation with evidence that the reason given is merely pretextual.[15]

Defendants argue that Plaintiff cannot show that their legitimate, non-retaliatory reason for her termination—poor performance—is pretext. Defendants argue that Smith had identified problems with Plaintiff's job performance even before she took her first FMLA leave of absence in August 2015. Defendants allege that Smith held a coaching session with Plaintiff in June 2015, and she continued to receive low performance scores at her evaluation in October 2015. During Plaintiff's second leave of absence, another employee, Kristina Hebert, was asked to take over her job duties. Defendants allege that Hebert identified numerous errors in Plaintiff's work, prompting Smith to conduct a review of Plaintiff's work. Smith testified that she discovered more than 100 errors in Plaintiff's work and decided to fire her while she was on her second FMLA leave of absence because of these errors.

---

[14] *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006).

[15] *Garcia v. Penske Logistics, L.L.C.*, 631 Fed.Appx. 204, 210 (5th Cir.2015) (internal citations omitted).

Smith waited until Plaintiff returned from FMLA leave to terminate her employment so that Plaintiff would not lose benefits during that time.

Plaintiff's version of events, on the other hand, varies wildly. Plaintiff alleges that while she was on leave, Smith reviewed her work in order to find a reason to terminate her. She alleges that Smith felt that Plaintiff's leave had put her "in a bind." Plaintiff identifies the following evidence of pretext:

1) Smith failed to follow hospital policy in choosing to terminate Plaintiff. The termination policy, which Smith wrote, required that Smith seek consent of the CEO before firing an employee. Smith admitted that Plaintiff was the only person she could recall firing without the CEO's consent.[16]

2) Plaintiff argues that prior to her initial FMLA leave of absence she received high evaluations, despite what Defendants have alleged.[17] She alleges that when she returned from her initial leave of absence she received a lower evaluation. She alleges that Smith then began to "write her up" more frequently. She alleges that Smith was engaged in a "campaign of constant fault-finding."

3) Plaintiff alleges that she was treated less favorably than other employees. For instance, she offers evidence that her co-worker, Rhonda Parr, twice inadvertently purged three-years-worth of employee evaluations from hospital's system. Parr offered to resign

---

[16] *See Hamilton v. AVPM Corp.*, 593 F. App'x 314, 321 (5th Cir. 2014) ("Although an employer's failure to follow its own policies may be probative of discriminatory intent, we require discharged employees in discrimination cases to show, in addition, that they were treated differently from non-minority employees.").

[17] *See* Reason 5.

but was discouraged from doing so. Plaintiff alleges that Parr's mistakes were worse than any of the errors attributed to Plaintiff, yet Parr was not terminated. In addition, while reviewing Plaintiff's work during her absence, Hebert informed Smith that she had made some of the same mistakes as Plaintiff. Hebert was not disciplined.[18]

4) Plaintiff alleges that Smith made derogatory remarks about her leave, stating that she had left her "in a bind." Plaintiff argues that Smith "chewed her out" for crying at work when she learned of her husband's cancer diagnosis and criticized her for talking about him.

5) Plaintiff argues that the evidence indicates that Smith has attempted to create a paper trial to support her explanation of events. She argues that the written denial of her second FMLA request has mysteriously gone missing, and the remarks regarding the June 2015 coaching session in which Smith alleges she discussed Plaintiff's poor performance were not added to Plaintiff's employee record until around the time of her termination. In addition, Smith's explanation of the meeting has changed from "training on a new process" to "discussing Plaintiff's errors."

6) Plaintiff correctly points out that temporal proximity between FMLA leave and an employee's termination can be evidence of pretext.[19]

---

[18] *See Jordan v. Ector Cty.*, 516 F.3d 290, 300 (5th Cir. 2008) ("A reasonable jury could conclude that the reasons given for Jordan's termination were pretextual. Other employees, including the previous Clerk, engaged in similar conduct without being disciplined.").

[19] *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("[T]emporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation.").

> Plaintiff was terminated within hours of returning to work from her second FMLA leave.
>
> 7) Plaintiff argues that Smith's explanation for why she was terminated and why Smith failed to seek the CEO's consent are amorphous and disingenuous.

Certainly, Plaintiff has more than carried her burden to show a material issue of fact as to whether Defendants' legitimate non-discriminatory reason is pretext. Defendants submit an army of arguments disputing the above assertions of pretext, all of which simply serve to create more issues of fact. Any one of the aforementioned reasons might have been enough to warrant a denial of summary judgment. Accordingly, Defendants' request for summary judgment on Plaintiff's FMLA retaliation claim is denied.

### III. ADA Associational Disability Discrimination

Plaintiff next alleges that she was terminated because of her husband's illness or disability. "The Fifth Circuit has not explicitly recognized a cause of action for discrimination based on association with a handicapped individual, nor [has it] described what such a claim requires. . . . District courts within this Circuit have, however, recognized a cause of action for associational discrimination."[20] These district courts apply the following test, adopted from the Tenth Circuit, to analyze an associational disability discrimination cause of action:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action;
> (2) the plaintiff was subjected to adverse employment action;

---

[20] *Grimes v. Wal-Mart Stores Texas, L.L.C.*, 505 F. App'x 376, 380 (5th Cir. 2013).

(3) the plaintiff was known by his employer at the time to have a relative or associate with a disability;
(4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.[21]

"If the plaintiff in an ADA 'association discrimination' case can establish these four elements, then the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. Once such a reason is proffered, the burden shifts back to the plaintiff to show that the employer's stated reason is pretextual."[22] Defendants argue that Plaintiff cannot establish a prima facie case because she cannot show that (1) she was qualified for her job in light of her performance issues and (2) that her husband's disability was a determining factor in her termination.

As to the first argument, this Court agrees with Plaintiff that the standard for determining whether a party is "qualified" for a job should not consider job performance. The Fifth Circuit has said that the fact that a plaintiff "was hired initially indicates that he had the basic qualifications" provided that, at the time of the adverse action, he had not "suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired."[23] Here, there is no suggestion that Plaintiff had failed to maintain the basic qualifications of her position. Rather, Defendants argue that her performance issues and poor

---

[21] *Moresi ex rel. Moresi v. AMR Corp.*, No. CA 3:98-CV-1518-R, 1999 WL 680210, at *3 (N.D. Tex. Aug. 31, 1999).
[22] *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1085 (10th Cir. 1997).
[23] *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988); *see Berquist v. Washington Mut. Bank*, 500 F.3d 344, 350 (5th Cir. 2007).

reviews made her unqualified for the position. In making this argument, Defendants cite to *Sreeram v. Louisiana State University Medical Center-Shreveport*, in which the court held that the plaintiff was not qualified for her position as a medical resident because she had received only negative reviews from every doctor that evaluated her.[24] Such is not the case here; Plaintiff received several positive reviews during her employment.[25]

Second, Plaintiff points to evidence that she argues creates a reasonable inference that her husband's disability was a determining factor in her termination. Plaintiff argues that her husband was a covered beneficiary on the LOSGH health plan for which Smith was the plan administrator. She alleges that Smith made comments regarding increased premiums because of his care and the care of another employee with cancer. She also alleges that Smith insisted that her husband have kidney dialysis at LOSGH in order to save the hospital money.

The parties agree that Plaintiff must show that her husband's disability was a but for cause of her termination.[26] The court finds these instances too tenuous and circumstantial to establish a prima facie case of disability discrimination. Plaintiff does not show that Smith had any discriminatory animus toward her husband because of his disability or that she made any negative comments regarding his illness.[27] The facts set forth above do not

---

[24] *Sreeram v. Louisiana State Univ. Med. Ctr.-Shreveport*, 188 F.3d 314, 318 (5th Cir. 1999) ("Every doctor to evaluate Dr. Sreeram found that her performance as a surgeon was insufficient to allow her to continue in the program.").

[25] *See Eastin v. Entergy Corp.*, 42 So. 3d 1163, 1194 (La. App. 5 Cir. 2010).

[26] *See Crossley v. City of Coshocton*, No. 2:13-CV-804, 2015 WL 1247005, at *8 (S.D. Ohio Mar. 18, 2015).

[27] *See Spinks v. Trugreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 796 (S.D. Tex. 2004).

create a reasonable inference that Plaintiff's husband's disability was a factor in Plaintiff's termination especially in light of her arguments that her requests for FMLA leave were the reason for her termination. Accordingly, Plaintiff's associational disability discrimination claim is dismissed.

### IV. ADA and LEDL Disability Discrimination

Plaintiff next brings a claim for disability discrimination, alleging that she was denied the opportunity to work overtime because of her own disability—her ovarian cysts and hysterectomy. Defendants argue, however, that Plaintiff cannot show that she was disabled under the terms of the ADA.[28] The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities[29] of such individual; a record of such an impairment; or being regarded as having such an impairment."[30] The Code of Federal Regulations defines "physical or mental impairment" as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine."[31]

---

[28] *See* 42 U.S.C. § 12112(a).
[29] *See* 42 U.S.C. § 12102(2) ("(A) For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. (B) For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.").
[30] *See* 42 U.S.C. § 12102(1).
[31] 29 C.F.R. § 1630.2.

Plaintiff argues that her ovarian cysts made it difficult to sit for long periods of time, caused back pain, and required more frequent bathroom trips. She ultimately had a hysterectomy to remove the cysts. Plaintiff also admits, however, that she was released to full work duty by her doctor when she returned to work after her hysterectomy. Accordingly, when she requested to work overtime after her husband became ill, she was no longer experiencing any limitations and the source of her pain had been removed. Plaintiff cannot then show that she had a physical impairment which limited a major life activity under the terms of the ADA at the time of the adverse employment action. Plaintiff's ADA and LEDL discrimination claims are dismissed.[32]

## V. ADA and LEDL Retaliation

Plaintiff alleges that Defendants retaliated against her in violation of her rights under the ADA and LEDL in two ways: (1) they refused her request to work overtime in anticipation of her request for additional leave to care for her husband; and (2) they canceled her husband's COBRA insurance after she filed a charge of discrimination with the EEOC.

In order to establish a prima facie case of retaliation under the ADA, a plaintiff must show that:

> (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its

---

[32] *Tribble v. Ouachita Par. Police Jury*, 939 F. Supp. 2d 626, 629–30 (W.D. La. 2013) ("The Fifth Circuit has held that claims brought under LEDL are analyzed using the same framework and precedent as the ADA claims, leading to the same result.").

reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation.[33]

In her first allegation of retaliation, Plaintiff alleges that her request for FMLA leave was a request for accommodation under the ADA and that the denial of the opportunity to work overtime was in retaliation of that protected activity. The Fifth Circuit has, however, unequivocally held that "a request for FMLA leave is not a request for a reasonable accommodation under the ADA."[34] Accordingly, Plaintiff cannot show that she engaged in a protected activity, and her ADA retaliation claim on this ground is dismissed.

In her second allegation of retaliation, Plaintiff alleges that Defendants retaliated against her for filing an EEOC charge of discrimination and lawsuit by canceling her husband's COBRA insurance. Plaintiff filed an EEOC charge in May 2016 and then filed suit in October 2016. She learned in February 2017 that her husband's COBRA insurance had been canceled. Even assuming that Plaintiff could establish a prima facie case on this claim, she has presented no evidence that Defendants' legitimate, non-discriminatory reason is pretext. Defendants explain that Plaintiff mistakenly sent her premium payments directly to LOSGH instead of to GILSBAR, the hospital's COBRA administrator. This mistake caused a delay in payment that jeopardized COBRA coverage. Smith addressed the situation immediately and restored coverage on the day that she learned of the issue. Plaintiff has not submitted

---

[33] *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.,* 730 F.3d 450, 454 (5th Cir. 2013).
[34] *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017).

any evidence that this explanation is pretext for retaliation. Accordingly, Plaintiff's discrimination claims under the LEDL and ADA are dismissed.

**Plaintiff's Partial Motion for Summary Judgment**

Plaintiff seeks dismissal of three of Defendants' affirmative defenses: (1) failure to mitigate damages, (2) estoppel and waiver, and (3) the argument that Smith did not exercise "substantial control" over Plaintiff's work.

### I. Failure to Mitigate Damages

Defendants have identified Plaintiff's failure to mitigate damages as an affirmative defense. Under the ADA, a plaintiff suing for back pay "has a duty to mitigate his damages by using reasonable diligence to obtain substantially equivalent employment."[35] In deciding Defendants' Motion for Summary Judgment above, this Court dismissed all of Plaintiff's claims under the ADA. Accordingly, such an affirmative defense is unnecessary, and Plaintiff's request for its dismissal is moot.

### II. Waiver and Estoppel

Defendants have agreed to withdraw these affirmative defenses. However, they seek to reserve the right to challenge Plaintiff's ability to establish a prime facie case on her claims "because she is unable to demonstrate that she was qualified for her job in light of her poor work performance."[36] This Court has already held above, however, that Plaintiff was qualified for her job and that her job performance is not a relevant factor

---

[35] *U.S. E.E.O.C. v. IESI Louisiana Corp.*, 720 F. Supp. 2d 750, 754 (W.D. La. 2010).
[36] Doc. 38, p.8.

in such a determination. Accordingly, Defendants' affirmative defense regarding Plaintiff's qualification is dismissed.

### III. Substantial Control

Defendants have agreed to withdraw this affirmative defense.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART. All of Plaintiff's claims under the ADA and LEDL are DISMISSED WITH PREJUDICE. Plaintiff's Motion for Partial Summary Judgment is DENIED AS MOOT. Defendants' affirmative defenses of failure to mitigate, estoppel and waiver, and substantial control are DISMISSED AS MOOT.

New Orleans, Louisiana this 7th day of August, 2017.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**